## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WEST BEND MUTUAL INSURANCE
COMPANY,

    Plaintiff,

    v.

UNITED ROAD TOWING SERVICES,
INC., CITY OF CHICAGO, and T & B
LIMITED, INC.,

    Defendants.

No. 06 C 4848
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage controversy in which, as is common in these matters, there are no significant material facts in dispute. Accordingly, I recite a short version of the events.

West Bend is the insurer who filed the initial claim for declaratory judgment of non-coverage, and United Road Towing Services ("United Road") is the insured. The City of Chicago and T & B Limited are additional defendants in the declaratory action. United Road filed a counterclaim seeking a declaration that there is coverage.

The circumstances giving rise to the case are these. T & B owned property which it leased to the City as an auto pound from the summer of 1991 through early winter of 1992. United Road operated the pound under contract from the City. Among other actions, West Bend alleges United Road disassembled and crushed cars on the property, which caused the release of hazardous substances on the land. While government agencies have not commenced lawsuits, T & B says it will cost $3.5 million or more to remediate the contamination and has sued United Road and the City to recover those costs. T & B sued the City in this courthouse (04 C 2578) on

April 9, 2004. The City tendered, by letter, the defense of the case to United Road around June 17, 2004, along with a demand for indemnification which, it said, was expressly required under its contract with United Road. It sent another letter to the same effect on August 12, 2004. Charles Baxter, an attorney, and the United Road officer for risk management was aware of the lawsuit and the letters though he does not recall seeing a copy of the complaint. Baxter did not review its policies or consult its insurance agent or notify insurers after either the June or August letters because he thought the matter was one of contractual indemnity which he believed was not covered by any of United Road's policies. United Road refused the City's demand on August 22nd.

The City threatened legal action in an October letter. That letter did not lead Baxter to research his insurance coverage and he did not accede to the City. The City filed a third-party complaint against United Road in the federal suit brought by T & B. It did this in March 2006 and then, in May, the City and United Road met. Eventually, in late June 2006, United Road agreed to assume the defense, and the City, which, unsurprisingly, had never notified West Bend of the T & B lawsuit, dismissed its third-party claim against United Road.

When it took over the defense, United Road reviewed its policies with its lawyers. T & B filed an amended complaint on August 1st, which named United Road as a direct defendant acting as the City's agent, and on August 8th United Road gave notice to West Bend. Baxter's position did not vary. He believed that there was no insurance coverage for contractual indemnity claims but, when sued, he saw a difference between indemnification and a direct action and so believed there was coverage.

United Road has spent over $350,000 in defending the City.

West Bend's decision to deny coverage was made by a senior attorney in consultation with outside counsel. They considered the issue of notice and the issue of whether, if proved, T & B's allegations would trigger coverage. In conjunction with this decision, West Bend filed this lawsuit as well. The insurer asserts that the notice provisions of the policies were not honored and that, in any event, the policies did not cover the claim, a conclusion which was not dependent on the premise that it was a contractual indemnity claim rather than a direct claim against United Road.

The insurance policies were acquired through an insurance agent for West Bend who did tell the insurer, in 1990, that United Road had a contract with the City to operate an auto pound fenced and guarded by Chicago Police Department, though the pound was not then in operation.

I will address the contractual provisions of the coverage and, to the extent relevant, the contract between the City and United Road in the course of dealing with the arguments of the parties.

**A. Notice**

West Bend notes that its policies require prompt notice of an accident and immediate dispatch to them of copies of any request or demand or notice or legal paper. United Road received a demand from the City in June 2004 and did not send a copy to West Bend. Its notice to the insurer came over two years later[1] after United Road agreed to take over the City's defense

---

[1] The delay by United Road totals 26 months, from June 2004, when the City first tendered the T & B suit to United Road, until August 2006 when United Road first caused the T & B complaint to be sent to West Bend. The delay by the City totals 28 months, from April 2004, when the T & B complaint was filed, until August 2006, when West Bend was first notified of the lawsuit. Although the City, an additional insured on West Bend's policies, never directly notified West Bend of the suit, United Road's notice applies to the City because notice

3

in the T & B lawsuit, at which time United Road was named as a direct defendant in that lawsuit. Failing to give notice may justify denial of coverage depending on the circumstances. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338 (Ill., 2006) (finding a denial of coverage proper where there was a 20-month delay despite the absence of prejudice to the insurer in its defense of the underlying lawsuit considering the policy language, the insured's knowledge of insurance practices and diligence in looking at possible coverage). An insured must provide notice within a reasonable time, with reasonableness being determined by the facts and circumstances of each case. *Id.* at 311-12. While "lack of prejudice may be a factor in determining the question of whether a reasonable notice was given in a particular case . . . it is not a condition which will dispense with the requirement." *Id.* at 312 *(quoting Simmon v. Iowa Mut. Cas. Co.*, 121 N.E.2d 509, 511 (Ill., 1954)). Other factors in the reasonable analysis include the specific language of the policy's notice provision, the insured's sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, and the insured's diligence in ascertaining whether policy coverage is available. *Id*. at 313 (*citing Northbrook*, 729 N.E.2d at 922).

Here, says West Bend, the insured was aware of the claim of environmental contamination for more than two years, as was United Road's management. The delay here is long enough that, under Illinois law, it has to be, as it can be, mitigated by other circumstances. Neither the City nor United Road are novices in insurance practices. *See Northern Ins. Co. of*

---

by an insured to its insurance company is sufficient to charge the insurer on all policies running in the insured's favor. *See Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 920 (Ill. App. Ct. 2000).

*New York v. City of Chicago*, 759 N.E.2d 144, 150 (Ill. App. Ct. 2001) (noting the City is hardly unsophisticated in commercial and insurance matters). United Road is in a business which for all practical purposes (and probably legal ones) it has to carry insurance; it had many policies over the years, and, in fact, did consider whether there was coverage for the claim.

United Road was not diligent in looking at possible coverage; it assumed that contractual indemnity claims did not come under its coverage when it could have examined the policies and sought advice from professionals. *See Northbrook* 729 N.E.2d at 923-24 (no diligence where general counsel decided there was no coverage without reading the policy or asking for professional assistance). It appears that an indemnity claim based on an "insured contract" may be covered by the liability policy in question, if certain other requirements are met. "Insured contracts" are an exception to the contractual liability exclusion in the policy and they include agreements by the insured to assume the tort liability of another to pay damages because of "property damage."

United Road responds by saying it provided "ample notice" to West Bend. I assume the use of the word "ample" in this context must have been written tongue in cheek. They should have said "adequate" under the terms of the policy. As in *Commercial Underwriters Insurance Company v. Aires Environmental Services, Ltd.,* 259 F.3d 792 (7th Cir. 2001), the insured says it was reasonable for United Road not to expect to be sued. This is too weak an argument to prevail. In *Commercial Underwriters*, Aires provided consulting services (on environmental and safety issues) to Reynold Metals. While an Aires employee was on the premises there was a very serious accident killing three persons and seriously injuring three more. The employee assisted in rescue attempts and reported the incident to his employer. A month later Reynolds was sued

5

and Aires knew of it. Almost two years later Aires was added as a defendant. It noticed its insurer and the Court of Appeals accepted the contention that Aires had never anticipated being sued - the standard being the appearance that a claim may be brought against Aires as opposed to the appearance that Aires may be liable.

What United Road argues on the facts here is that there was no appearance that it might be liable because it did not crush cars. For over two years, United Road knew that the City was demanding indemnity and defense in the case in which the City was sued over actions alleged to be performed by United Road employees. And worse, when the City filed a complaint, it averred that the T & B suit was based on the activities of United Road on T & B's land; the City's third-party complaint against United Road was filed in March, 2006 and United Road waited until August to notice the claim. United Road hoped it would not be dragged into the suit, as its management said, but it would not have bothered with the hope or fear had there been no appearance that a claim might be brought against it.

An insured may have good business reasons for not wanting to notice what it does not have to notice given the fact that too many notices, particularly of large but dubious claims, might affect rates and availability of insurance from year to year - but this is not a legal justification.

The requirement to give notice does not impose significant administrative burdens on the insured. The reasonableness of failing to notice must be considered in this light.

Ordinarily the belief that one is not liable is not an excuse for failing to give notice. *See Tribune Co. v. Allstate Ins. Co.*, 715 N.E.2d 263, 270 (Ill. App. Ct. 1999). United Road does say (more often than necessary) that it thought it was not liable and argues that it rationally believed

6

it was not covered for the loss. This, plus its conviction that it was not the polluter, United Road argues, establishes that it was reasonable for it to conclude that notice was not required. The reasonableness, at an early stage, of the insured's conclusion is understandable even in the face of the first and second tender letters from the City, which it might have thought were an inexpensive way for the City to transfer its troubles to United Road.

When the threat of lawsuits occurred in October 2005, United Road could no longer reasonably believe that they were not any kind of target or that it was their conduct that was at issue in the T & B case. It was, of course, still possible that they would not wind up as a defendant in that case, but it would have been clear to any reasonable attorney, in this case United Road's in-house attorney, that a lawsuit was to be anticipated and that it should notice its insurers.[2] It was unreasonable for United Road to not have notified its insurer once the City filed its third-party complaint in March 2006. There is also no reasonable excuse for United Road to have waited several more months to notify the insurer after United Road agreed to assume the City's defense and was named a direct defendant in the T & B suit. West Bend therefore has no obligation to provide defense costs or indemnification under the policies. *See Livorsi Marine*, 856 N.E.2d at 346 ("once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer.").

---

[2] The standard is whether any reasonably prudent person could foresee a lawsuit upon receipt of the first notice that would involve the insurer's policy and whether that person would either contact his attorney or his liability carrier. *Tribune Co.*, 715 N.E.2d at 270 (citation omitted).

## B. Pollution Exclusion

Even if notice was given, West Bend argues, the policy excludes coverage for releasing pollutants except where the pollutants are necessary for vehicle operation and leak from tanks or containers, or where a vehicle is damaged in an accident and pollutants are released as a result of the damage. Such vehicles are "covered autos." If release occurred because United Road was crushing or dismantling cars, which it denies, these exceptions would not apply and the pollution exclusion would hold. Such autos, the insurer says, are not covered autos which (1) do include autos used in United Road's business but (2) do not include autos not used in its business. Towing companies use autos, roughly speaking, in hooking them up or putting them on trailers, in reversing that process, and in storing them for pick up. *See Pekin Ins. Co. v. Fidelity & Guar. Insurance Co.*, 830 N.E.2d 10 (Ill. App. Ct. 2005). Crushing and dismantling cars is not use. I think this is the reason why the insurer's reports refer to the absence of such activities.

United Road says the duty to defend exists even when the allegations are false, which is true. But coverage is determined by what is alleged in the complaint. So an insured who is sued for negligent driving causing massive damage is entitled to coverage even if his driving was a model of safe practice, but only when the policy insures against claims resulting from negligent driving. He would not be covered if the suit alleged that he intentionally drove his car through the glass wall of a store whose goods offended him. *See Fed. Ins. Co. v. Arthur Andersen, LLP,* 522 F.3d 740, 745 (7th Cir. 2008) (Illinois uses a four-corners approach to evaluate the obligation to defend); *Thornton v. Paul,* 384 N.E.2d 335, 339 (Ill. 1978) ("As a general rule, the duty of an insurer to defend an action brought against the insured is to be determined solely from the allegations of the complaint.").

8

The rule concerning allegations has some leeway. Coverage of claims should not be denied simply because of the way a plaintiff pleads a cause of action against the insured. *Travelers Ins. Cos. v. Penda Corp.,* 974 F.2d 823 (7th Cir. 1992). This means the complaint has to be given a reasonably liberal construction. A construction which takes cognizance of the implications of a complaint as well as its specific allegations is permissible but possibly unhelpful to United Road.

The reading of the complaint may take into account the insurer's knowledge of "true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." *Associated Indem. Co. v. Ins. Co. of N. Am.*, 386 N.E.2d 529 (Ill. App. Ct. 1979).[3] All of this means that a court can apply a broader construction and take note of unpled facts to decide a coverage question. It does not mean, I think, that the insurer itself must do these things. I disregard the complaints about how the senior counsel of West Bend went about reaching his decision. The insurer can use a four-corners approach to complaint interpretation.[4]

---

[3] The evidence of the proposition that West Bend knew that cars weren't crushed and therefore knew that the complaint must concern pollutants that were dispersed in ways not subject to the pollution exclusion is this:
On March 10, 1993 a West Bend auditor wrote: "The insured only stores the cars and reports them to the police. The insured does not do any work on the cars." In the annual risk narrative report prepared for 1995-96 a West Bend employee wrote: "No work is done on the cars. Same operation." On October 30, 1997, a West Bend employee visited one or more auto pounds operated by United Road and wrote: There are no crushing operations, vehicle tear down for salvaging parts, etc."

[4] The insurer correctly notes that Illinois has not imposed any requirement to investigate independently the facts underlying the complaint but has instead left the question undecided. Other states affirmatively refuse to impose the obligation. In this case, United Road does not, as I see it, contend that there is such a duty but rather that an examination of the insurer's own file should reasonably be required. I need not opine on this point because the

I cannot say that there are "true but unpleaded facts" at issue here. The auditor who found no work done on cars included that fact in a report about a United Road Crawford Avenue location not at issue here. The writer of the risk narrative said "no work done on cars," but that observation does not state there is no crushing or disassembly, which actions do not necessarily fit within the common meaning of "work on cars." None of these reports were written by persons who, it can be said, visited the premises. The one who did, in 1997, visit a lot and did specifically say "there are no crushing operations, vehicle tear down for salvaging parts, etc." apparently was referring to a lot on Sacramento, which again, is not the lot at issue here. The law does not require that the insurer regard this evidence as showing that it is a "true, unpleaded fact" that cars were not crushed at the T & B location. Nor is it obliged to rely on United Road's assertion that it crushed no cars. It is not a fact, it is an assertion.

The internal structure of the complaint runs against interpreting it to allege dispersal of pollutants by leaks from tanks and damaged cars. The claim is for a remediation in the millions of dollars. It is not easily inferred that occasional leaks of the kind that are not excluded from coverage are at issue in the complaint filed by T & B. West Bend properly read the complaint to allege significant environmental damage from crushing and disassembling vehicles. This view of the complaint is, I think, the best argument for the insurer to make. But it is one not made for good reasons. In prosecuting its claim, T & B must emphasize that crushing and dismantling spills a lot of fluid on its land, but it is difficult to imagine that it can (or would want to) prove that all of the pollutants came from those operations. It is reasonable to assume that some fluid

---

material in the file on the point in question established no fact. It is a legal irony that where the insurer is in possession of facts outside the complaint that establish that the events are not covered by its policies, it still has a duty to defend based on the incorrect allegations stated in the complaint. *Sims v. Ill. Nat'l Cas. Co.*, 193 N.E.2d 123 (Ill. App. Ct. 1963).

10

leaked from some of the autos towed by United Road. Those are covered autos. Assuming that United Road did both tow and crush cars as alleged, then it will be on the hook for pollution from both sources. I doubt there is any way to distinguish pollution caused by motor oil leaking from a car because its seals have failed as opposed to pollution caused because the car's oil reservoir was crushed or cracked when dismantled.

In *Penda, supra*, 974 F.2d at 827, the Court cautioned against leaving insurers "at the mercy of [their] adversary's pleading skills," echoing and quoting the Illinois cases on point. To read the complaint as West Bend has done is inconsistent with the Illinois rules that govern insurers.

Fairly read, there exists a realistic potential, in my view a probability, that coverage exists, which is the Illinois law standard for finding coverage. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204 (Ill. 1992).

For these reasons, the pollution exclusion does not apply here.

## C. Care, Custody or Control Exclusion

This exclusion also does not apply to the facts presented here.

The policies exclude coverage for damage to property owned, rented or occupied by the insured and West Bend asserts this exclusion too. The soil at issue here is owned by the City, but I doubt it is occupied by United Road within the meaning of the exclusion. It appears that United Road served the same function as a contract worker in an operation controlled by the City and followed City policy and City orders.

This exclusion would not apply to damage to groundwater. But pollution of groundwater is alleged in the T & B complaint and this is enough to moot the owned property exclusion even if United Road could be said to occupy the property.

11

This exclusion would not apply to this case in which the insured is not claiming coverage for damage to its property but rather for T & B's charge that the insured damaged T & B's land. *See Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699 (7th Cir. 1994).

**D. Conclusion**

The motion of United Road for summary judgment is denied. The motion of West Bend for summary judgment is granted. West Bend does not have a duty to defend or indemnify the City and United Road in the T & B lawsuit.

ENTER:

James B. Zagel
United States District Judge

DATE: September 29, 2008